815 A.2d 620

**Andrew M. MITCHELL, Appellant**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (STEVE'S PRINCE OF STEAKS), Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 29, 2001.

Decided Jan. 21, 2003.

Brian R. Steiner, Philadelphia, for Andrew M. Mitchell, Appellant.

James A. Holzman, Harrisburg, Amber M. Kenger, Mechanicsburg, for W.C.A.B., Appellee.

Anthony J. Bilotti, Media, for Steve's Prince of Steaks, Appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

## OPINION

Justice CASTILLE.

In this workers' compensation appeal, we must determine the application of this Court's decision in *Kachinski v. Workmen's Compensation Appeal Bd. (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), in a situation where appellant, the Claimant below, failed to respond to his former employer's job referrals because he was incarcerated.[1] A divided Commonwealth Court panel held that appellant's failure to pursue job referrals while incarcerated was bad faith under *Kachinski*, thus warranting termination of his compensation benefits. For the reasons set forth below, we reverse.

On May 12, 1986, appellant was injured in the course and scope of his employment as a maintenance man with Steve's Prince of Steaks (Employer) in Philadelphia, when he was burned by a container of hot oil. Employer accepted liability for the injury and issued a notice of compensation payable. Appellant received $173.50 per week in total disability benefits based upon his average weekly wage of $200.00. In October 1991, while still receiving disability payments, appellant was incarcerated pursuant to a criminal conviction. He was paroled in March 1995, but was recommitted to prison in July 1995 for a parole violation.

On October 27, 1995, Employer filed a petition to terminate, suspend or modify appellant's compensation benefits. In response, appellant conceded that Employer was entitled to a suspension of benefits for the period during which he was

1. In *Kachinski*, which will be discussed at greater length below, this Court announced a four-part guideline to determine whether an employer is entitled to a modification of compensation benefits based upon an alleged change in the claimant's capacity to work.

incarcerated, but argued that he was entitled to a reinstatement of those benefits upon his release from prison.

The Workers' Compensation Judge (WCJ) made the following relevant findings: In November of 1995, while appellant was still incarcerated, Employer sent appellant's workers' compensation counsel referrals for three jobs, all in Philadelphia, which fit within appellant's physical restrictions. Based upon the credited deposition testimony of Employer's medical expert, appellant had sufficiently recovered from his work injury to be able to physically perform the referred jobs. Appellant did not follow through on the Philadelphia job referrals due to his incarceration in Somerset County, Pennsylvania. On November 18, 1996, appellant was paroled and, upon his release, he notified Employer of his willingness to pursue job referrals. Employer did not respond. Appellant sought gainful employment on his own, but to no avail.

Based upon these findings, the WCJ concluded that: (1) Employer was entitled to a suspension of benefits from July 30, 1995 through November 17, 1996, due to appellant's incarceration;[2] and (2) Employer was entitled to an outright suspension of benefits as of November 1995—*i.e.*, the point where Employer forwarded job referrals to appellant—based upon appellant having an earning capacity of $200.00 per week as of that date. With respect to the second conclusion, the WCJ reasoned that appellant's "incarceration is not a valid justification for failing to respond to the job notices," and thus appellant had acted in bad faith for purposes of *Kachinski*. The WCJ also rejected appellant's argument that the job referrals were inappropriate because they were for positions located in Philadelphia while he was incarcerated in western Pennsylvania.

Appellant appealed to the Workers' Compensation Appeal Board (Board), which affirmed the WCJ, employing similar reasoning. Upon appellant's further appeal, the Common-

**2.** The WCJ premised this conclusion upon section 306(a)(2) of the Act, which provides that "[n]othing in this act shall require payment of compensation ... for any period during which the employe is incarcerated after a conviction...." 77 P.S. § 511.1.

wealth Court affirmed in a published opinion. *Mitchell v. Workers' Compensation Appeal Bd. (Steve's Prince of Steaks)*, 734 A.2d 945 (Pa.Cmwlth.1999). In that appeal, appellant argued, as he had below, that he was entitled to a reinstatement of benefits upon his release from prison because Kachinski's requirement that a claimant follow-up in good faith on job referrals should not apply when a claimant is unable to pursue the referrals due to his incarceration. The Commonwealth Court panel majority rejected appellant's argument, holding that "incarceration is not a valid justification for failing to respond to job notices." The panel majority also found that Employer had complied with "all the requirements set forth in *Kachinski*," there was nothing in the case law to say that an Employer cannot invoke the *Kachinski* model while a claimant is incarcerated and, since appellant had failed to respond to the offered positions, he was not entitled to reinstatement of his benefits. 734 A.2d at 946–47.

Judge Doyle dissented, noting that the majority's decision held, in effect, "that an employer may permanently terminate all future benefits of a claimant because he is in prison." *Id.* at 947 (Doyle, J., dissenting). The dissent also noted that the majority had gone beyond previous decisions of this Court and the Commonwealth Court, which had recognized only that an employer is entitled to a suspension of benefits during a period of incarceration, but did not suggest that a permanent suspension of benefits was an appropriate consequence of incarceration under the *Kachinski* test. Indeed, the dissent noted, this Court in *Banic v. Workmen's Compensation Appeal Bd. (Trans–Bridge Lines, Inc.)*, 550 Pa.276, 705 A.2d 432 (1997), while phrasing the issue from the opposite perspective, had specifically noted that it was an open question: " 'the issue of whether a claimant's release from prison **automatically** entitles the claimant to a reinstatement of benefits is left for another day.' " 734 A.2d at 948 (Doyle, J., dissenting), *quoting Banic*, 705 A.2d at 437 n. 8 (emphasis by Judge Doyle).

Turning to the question of whether an inability to follow through on job referrals due to incarceration should require a

permanent cessation of benefits, Judge Doyle stated that he did not believe that such was the intent of the General Assembly. Noting the conclusiveness of a modification resulting from a finding of *Kachinski* bad faith under existing Commonwealth Court authority,[3] the dissent was concerned that "many employers who discover that a claimant has been incarcerated will simply 'create' a job and offer it to the incarcerated claimant, knowing full well when it is offered that the claimant cannot possibly appear for an interview, or physical examination, because he or she is in jail." *Id.* at 948, 532 A.2d 374. By such a tactic, the dissent noted, the employer may obtain a permanent suspension of benefits based upon mere imputed bad faith by a claimant, which in fact is not bad faith at all since, "unless the claimant escapes from jail to present himself for a job interview . . . he may not 'cure' his bad faith . . . ." The dissent concluded that "[s]uch a scenario not only flies in the face of the humanitarian purpose and policies behind the Workers' Compensation Act, it is, in my view, unconscionable." *Id.*

■ This Court granted appellant's Petition for Allowance of Appeal. In workers' compensation matters, our standard of review is well-settled: this Court must affirm the adjudication below unless we find that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed, or that a necessary finding of fact is not supported by substantial evidence. 2 Pa.C.S. § 704; *Reinforced Earth Co. v. Workers' Compensation Appeal Bd. (Astudillo),* 810 A.2d 99, 104 (Pa. 2002) (plurality opinion); *United Cerebral Palsy v. Workers' Compensation Appeal Bd. (Emph),* 543 Pa.544, 673 A.2d 882, 886 n.10 (1996). The question for this Court is whether the tribunals below committed an error of law in their conclusion

3. A finding of a claimant's bad faith under *Kachinski* has been held to have the collateral effect of foreclosing a reinstatement of benefits, at least in the absence of evidence of a change in the claimant's medical condition. *See, e.g., Johnson v. Workmen's Compensation Appeal Bd. (McCarter Transit, Inc.),* 168 Pa.Cmwlth.439, 650 A.2d 1178, 1181–82 (1994); *Spinabelli v. Workmen's Compensation Appeal Bd. (Massey Buick, Inc.),* 149 Pa.Cmwlth.362, 614 A.2d 779 (1992).

concerning the effect of appellant's incarceration, and the role of *Kachinski*, in this scenario. Our review of questions of law, of course, is plenary.

■■■■ The Act recognizes that a claimant's disability may change over time and, to that end, permits the modification, reinstatement, suspension, or termination of a claimant's benefits based upon the degree of change in the claimant's disability. *Banic*, 705 A.2d at 435. Thus, Section 413 of the Act provides, in relevant part:

> A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed....

77 P.S. § 772. "Disability" for purposes of the Act "has long been synonymous with the loss of earning power" attributable to the work-related injury. *Banic*, 705 A.2d at 435; *Dillon v. Workmen's Compensation Appeal Bd. (Greenwich Collieries)*, 536 Pa.490, 640 A.2d 386, 391 (1994) (collecting cases); *accord Reinforced Earth*, 810 A.2d at 108. Of course, "[b]oth capacity to work and availability of work affect the extent of an injured employee's disability (loss of earning power)." *Dillon*, 640 A.2d at 392; *accord Reinforced Earth*, *supra*. Moreover, we have held that "availability" of appropriate work means "actual availability." *Kachinski*, 532 A.2d at 379. The guidelines articulated by this Court in *Kachinski* to evaluate requests to modify benefits on grounds of a change in the claimant's medical condition/work capacity attempt to "incorporate[ ] both the medical and economic aspects of a disability

claim." *Reinforced Earth, supra.* Specifically, *Kachinski* directed that:

(1) The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

(2) The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

(3) The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

(4) If the referral fails to result in a job then claimant's benefits should continue.

532 A.2d at 379–80.

Notably, immediately after setting forth these "concrete" guidelines, the *Kachinski* Court emphasized that "the viability of this system depends on the good faith of the participants," meaning both employers and claimants:

The referrals by the employer must be tailored to the claimant's abilities ... and be made in a good faith attempt to return the injured employee to productive employment, rather than a mere attempt to avoid paying compensation. By the same token, employees must make a good faith effort to return to the work force when they are able, and their benefits can be modified for failure to follow up on referrals or for willfully sabotaging referrals.

*Id.* at 380 (citation omitted). Thus, the *Kachinski* guidelines impose "reciprocal obligation[s]" upon employers and claimants. *Landmark Constructors, Inc. v. Workers' Compensation Appeal Bd. (Costello),* 560 Pa.618, 747 A.2d 850, 854 (2000).

This Court has recognized the continuing utility of the *Kachinski* guidelines in cases where that construct is appropriate. *Landmark Constructors,* 747 A.2d at 854–55. But we have also recognized that our experience with *Kachinski* has taught that those guidelines are "not to be rigidly applied to

situations in which an employer seeks to suspend or terminate a claimant's benefits because the claimant's loss of earning power is no longer caused by the work-related injury but rather by something unrelated to the work-related injury." *Banic*, 705 A.2d at 436 (summarizing cases where courts appropriately departed from *Kachinski* guidelines). *See also Schneider, Inc. v. Workers' Compensation Appeal Bd. (Bey)*, 560 Pa.608, 747 A.2d 845, 848 (2000) (surveying cases where Court has "allowed for narrow exceptions to *Kachinski* where the application of the guidelines would be meaningless or perfunctory"); *Reinforced Earth, supra* (similar survey). "In sum, while the *Kachinski* guidelines continue to apply in most cases involving an employer's request for a suspension of benefits, we have not blindly applied the guidelines when the unique facts of a given case require us to look beyond our decision in *Kachinski*." *Schneider, supra; accord Landmark Constructors*, 747 A.2d at 855.

Thus, in *Schneider*, for example, this Court held that the employer was not required to prove job availability under *Kachinski*. There, the employer sought suspension of benefits after the claimant, who was still receiving total disability benefits for his work-related injury, sustained a non-work-related head trauma, which resulted in brain damage and paralysis. The WCJ credited medical evidence to the effect that the claimant's work-related injury had resolved to the point where he could have performed sedentary or light-duty work if he were not rendered otherwise totally and permanently unable to work because of his brain injury. The WCJ suspended benefits, but the Board reversed (and the Commonwealth Court affirmed that reversal) on grounds that the employer had failed to prove job availability. This Court reversed, holding that it "would be pointless and would run contrary to the purpose of the ... Act" to require a showing of job availability where the employee is precluded from ever returning to work because of the non-work-related injury. 747 A.2d at 847. *See also id.* at 849–50 ("Showing that a sedentary or light-duty position is available to [claimant] would be an exercise in futility by virtue of [claimant's]

physical condition.... [B]ecause the objective of reintroducing injured workers into the workforce would be in no way promoted here, we will not require a showing of job availability.").

The *Banic* case provides a prime example of the inapplicability of the *Kachinski* model where the controlling change in a claimant's capacity to work has to do with a factor other than a change in the claimant's work-related medical impairment. Thus, the employer in *Banic* sought a suspension of benefits based upon the fact that the claimant had since been incarcerated. The employer argued that it was the fact of incarceration, and not the work-related injury, which should be deemed the cause of the claimant's loss of earning power. This Court agreed and held that, in such a circumstance, the *Kachinski* test simply does not apply. Instead, the employer's entitlement to a suspension of benefits during the period of incarceration stemmed from the more elemental fact that the claimant's loss of earning power in that period arose from the fact of incarceration and not the fact of the prior work injury.[4]

*Banic* was limited to a determination of the propriety of suspending benefits during the period of incarceration and the applicability of *Kachinski*. As Judge Doyle noted below, the *Banic* Court expressly reserved "for another day" issues related to the reinstatement of benefits following a claimant's release from incarceration. *Id.* at 437 n. 8. That day has now arrived.

**4.** This Court decided *Banic* under the version of the Act in effect before Section 306(a)(2) was amended in 1993. That amendment, which has since been recodified at 77 P.S. § 511.1, specifically directs that "[n]othing in this act shall require payment of compensation ... for any period during which the employe is incarcerated after a conviction...." One question presented in *Banic* was whether the 1993 amendment applied retroactively. We did not reach that question, however, as we concluded that, even under the state of the law as it existed before the amendment made the disentitlement explicit, the claimant was not entitled to benefits during a period of incarceration since it was the claimant's own conduct, rather than his work-related injury, which must be deemed the cause of his loss of earning power. 705 A.2d at 435, 437.

Appellant argues that an incarcerated person is simply unable to make a "good faith effort" to pursue job referrals, much less return to the workforce. Appellant further argues that Employer did not act in good faith, for purposes of *Kachinski*, by forwarding job referrals to him at a time when it knew that he was incarcerated and could not respond. In appellant's view, Employer's job referrals were a mere attempt to avoid paying compensation. Appellant also notes that the language of the 1993 amendment to the Act, providing for the suspension of benefits **during** a period of incarceration, fully protects employers. He argues that that language should supplant *Kachinski* in cases involving incarcerated claimants, and the courts should not fashion an *ad hoc*, more permanent consequence in favor of employers. Furthermore, appellant argues that, under the reasoning in *Banic*, when benefits to an injured worker are suspended because of incarceration status, those benefits should be reinstated upon the claimant's release from incarceration, at which point the employer should have to satisfy *Kachinski* in order to secure a further suspension of benefits.

Employer responds, in relevant part, that the fact of a claimant's incarceration should not restrict an employer's ability to seek a suspension of benefits upon other grounds. Employer argues that appellant's benefits here were properly suspended under *Kachinski*, irrespective of appellant's incarceration, because it proved that appellant's medical condition had changed, and that there was available work within appellant's remaining medical restrictions. Employer suggests that it was neither appellant's disability nor the absence of appropriate available jobs which prevented him from re-employment, but rather appellant's "own actions, plac[ing] himself behind bars" which rendered him unavailable for those jobs. Employer also argues that a continuing suspension of benefits following appellant's release from prison is proper because it "successfully litigated" its claim upon *Kachinski* grounds and, furthermore, it should be under no obligation to refer additional jobs to appellant upon his release from prison.

■ In light of the Act and the governing principles that have emerged in this area, we hold that, although appellant was not entitled to benefits while he was incarcerated, he cannot be deemed to have permanently forfeited his compensation benefits merely because his incarceration rendered him unable to pursue job referrals. We recognize that this case, unlike *Banic,* involves a credited change in appellant's medical condition, which rendered him physically able to return to the work force. But we cannot turn a blind eye to the fact that appellant was incarcerated at the time Employer sought to invoke *Kachinski.* That incarceration directly affects the "economic aspect" of the guidelines *Kachinski* established, no less than it affected the calculus in the *Banic* case—operating there to the employer's benefit by rendering *Kachinski* inapplicable.

Furthermore, our conclusion is consistent with a proper understanding of the "reciprocal obligation" underpinnings of the *Kachinski* guidelines. In this regard, our discussion in *Landmark Constructors* of the employer's obligation to workers injured on the job is instructive:

Interpreting Section 413 to require a showing of job availability is also consistent with the salutary purpose of the Act. As we stated in *Kachinski*

A recipient of workmen's compensation is by definition a person who has been injured during the operation of the employer's business. Although the employer is not personally responsible for an employee's injury, the employer, as the owner of the production process, nonetheless bears a responsibility to those who are injured while operating it. That responsibility, though not without its limits, requires at a minimum some effort on the part of the employer to make the injured employee whole.

532 A.2d at 379. In large measure, we adopted the actual availability standard in *Kachinski* in recognition that, because of the Act's humanitarian objectives, an employer must do more than simply pay employees benefits for work-related injuries. In order to make the employee whole, the

employer must try to reintroduce into the workforce those employees injured while pursuing the employer's interests.

747 A.2d at 854. We agree with appellant that it hardly amounts to *Kachinski* "good faith" for an employer to seek to "reintroduce" an injured worker into the work force by forwarding job referrals while the claimant is incarcerated and then to seek a permanent suspension when the claimant inevitably fails to pursue the referrals. By the same token, it hardly amounts to *Kachinski* "bad faith" for the claimant to fail to engage in the futile act of pursuing the referrals while in prison.

We reaffirm *Kachinski's* teaching that the obligation of the employer in an instance such as this remains "a good faith attempt to return the injured employee to productive employment, rather than a mere attempt to avoid paying compensation." 532 A.2d at 380. The same circumstance that absolved the employer in *Banic* of the futile responsibility of showing job availability should absolve the claimant in a circumstance such as appellant's from having to engage in the pursuit of a job he cannot possibly accept because of his incarceration. Here, as in *Banic,* the very principles that powered the decision in *Kachinski* make clear that the construct does not apply. Accordingly, the Commonwealth Court erred in holding that appellant was not entitled to a reinstatement of benefits upon release because of his alleged bad faith under *Kachinski.*

Since the Act makes clear that the disentitlement to benefits while incarcerated after a conviction extends only to the period of incarceration itself, and because we have concluded that the *Kachinski* guidelines cannot be invoked to secure a permanent cessation of benefits during incarceration, appellant was entitled to reinstatement of his benefits upon his release from incarceration. Accordingly, for the foregoing reasons, we reverse the judgment of the Commonwealth Court and remand the matter to the WCJ for proceedings consistent with this Opinion.

Justice NEWMAN did not participate in the consideration or decision of this case.

Former Chief Justice FLAHERTY and Former Chief Justice ZAPPALA did not participate in the decision of this case.