**NORTH LEBANON TOWNSHIP,**
Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (HARBAUGH),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 7, 2003.

Decided July 18, 2003.

---

Eugene N. McHugh, Harrisburg, for petitioner.

John M. Zimmerman, Jonestown, for respondent.

Howard D. Kauffman, Harrisburg, for intervenor, North Cornwall Township.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge SMITH–RIBNER.

North Lebanon Township appeals from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ), which dismissed the fatal claim petition filed by Elaine Harbaugh (Claimant), widow of decedent Calvin Harbaugh, against North Cornwall Township but granted the claim petition against North Lebanon Township and awarded Claimant death benefits of $561 per week commencing on August 18, 1998. On appeal of North Lebanon, the Board modified the weekly death benefit to $286.11 but otherwise affirmed the WCJ.[1]

I

Calvin Harbaugh had a history of heart problems, and in 1973 and 1997 he underwent procedures to replace defective heart valves. From February 7, 1994 until his death on August 18, 1998, Harbaugh was a volunteer fire policeman for the Ebenezer Fire Company (Ebenezer) in North Lebanon, Lebanon County. On August 18, 1998, Harbaugh was at Ebenezer with Lieutenant Carl Clemens, a volunteer fire policeman with Ebenezer and also with Neversink Fire Company (Neversink) in neighboring North Cornwall. Clemens received pager notification that the Lebanon

---

1. North Lebanon contends that the WCJ and Board erred in the following respects: in determining that North Lebanon was Harbaugh's employer at the time of his death; in failing to determine that Harbaugh was a "borrowed employee" of North Cornwall on the date of his death; in determining that North Lebanon did not preserve the question of whether Claimant provided adequate notice of a compensable injury; in determining that the presumption of an injury arising as a consequence of an occupational disease applied to the cardiac-related death of Harbaugh; in failing to determine whether Harbaugh's cardiac death was a consequence of abnormal working conditions; and in failing to identify North Cornwall as a party to the Board's decision and to find that it was the responsible employer at the time of Harbaugh's death.

County Emergency Management Agency had dispatched Neversink to an automobile accident in North Cornwall, and Harbaugh asked if Clemens needed assistance. Clemens indicated that Neversink could always use help, and Harbaugh followed him to the accident scene. Harbaugh did not speak to Ebenezer's fire chief or any other supervisors before leaving for the accident scene.

Upon Harbaugh's arrival, Lieutenant Scott Balthaser of Neversink directed Clemens and Harbaugh to separate intersections where they were to direct traffic away from the accident scene. The temperature was between 85 and 90 degrees, traffic was heavy and congested, and Neversink did not have enough trained fire police to adequately police the area. After directing traffic for approximately an hour, Harbaugh collapsed in the middle of the intersection and died from cardiac arrhythmia/arrest, valvular heart disease, chronic obstructive pulmonary disease and preliminary hypertension. Claimant Exhibit C–1. Ronald Miller, then fire chief of Ebenezer, investigated Harbaugh's death and filed reports with both municipalities. Miller also assisted Claimant in initiating a workers' compensation claim by providing the necessary information to officials in North Cornwall and in North Lebanon.

On May 28, 1999, Claimant filed her claim petitions against North Cornwall and North Lebanon, which were consolidated for hearing. The only medical testimony was from Scott J. Deron, D.O., one of Harbaugh's treating cardiologists, who saw him in November 1997 and in March 1998. Dr. Deron opined within a reasonable degree of medical certainty that Harbaugh died from a cardiac arrhythmia induced by the heat, humidity and strain of directing the heavy traffic flow as it existed on August 18, 1998. Clemens testified that upon arriving at the accident scene he informed Lieutenant Balthaser that Harbaugh was an experienced fire policeman from Ebenezer. Clemens stated that he did not command Harbaugh to accompany him to the accident scene because he was not Harbaugh's supervising lieutenant within Ebenezer.

North Cornwall called Clyde Miller, director of the Lebanon County Emergency Management Agency, and an official familiar with the origins and purposes of the County's "Mutual Aid Agreement for Emergency Services." He testified that North Cornwall and North Lebanon had many years earlier signed the Mutual Aid Agreement, a document used by Lebanon County to coordinate county and municipal emergency operation services. According to Miller, one of the purposes of the Agreement was to ensure that emergency personnel had workers' compensation coverage no matter where in the county they responded to an emergency. Miller further testified that in a situation such as occurred with Harbaugh it was his understanding that the volunteer fire policeman's "home" jurisdiction would be liable for any workers' compensation benefits due.

North Lebanon presented the testimony of Robin Hemperly, the township's assistant manager. Hemperly testified that under the Mutual Aid Agreement signed by North Lebanon on March 18, 1991 and the regulations contained in its "Fire Police Standard Operating Procedure," Harbaugh's death was not covered by North Lebanon's workers' compensation policy. The WCJ found that Hemperly and North Lebanon's insurance agent only discussed whether North Lebanon dispatched Harbaugh and that Hemperly acknowledged that the standard operating procedure does not provide that a fire policeman must be dispatched to be protected under North Lebanon's workers' compensation

coverage. She did not file a claim with North Lebanon's workers' compensation carrier because the Township's insurance agent instructed her not to do so.

The WCJ dismissed Claimant's claim petition against North Cornwall but granted the petition against North Lebanon. The WCJ found that the testimony of Miller was very credible and that the testimony of Hemperly was not credible because she did not comprehend the Mutual Aid Agreement that North Lebanon had signed. Moreover, the Mutual Aid Agreements signed by North Lebanon and North Cornwall were binding on the townships, and North Lebanon was responsible for medical bills and indemnity payments of $561 per week under terms of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626. The WCJ concluded that Claimant proved that her husband was a volunteer fireman and that he died due to work-related conditions, which aggravated his preexisting but stable heart condition. The Board concluded that North Lebanon failed to rebut the statutory presumption that applied under Section 301(e) of the Act, 77 P.S. § 413, or under Section 301(f) of the Occupational Disease Act, Act of June 21, 1939, P.L. 566, as amended, 77 P.S. § 1401(f).[2]

## II

■ The Court's review of the Board's order is prescribed in Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. It provides that the Court shall affirm unless it determines that the adjudication is in violation of constitutional rights, that it is not in accordance with law, that provisions relating to Commonwealth agency practices in Sections 501–508 of the Administrative Agency Law, 2 Pa.C.S. §§ 501–508, have been violated or that any necessary finding of fact is not supported by substantial evidence. *See Mitchell v. Workers' Compensation Appeal Board (Steve's Prince of Steaks)*, 572 Pa. 380, 815 A.2d 620 (2003). The WCJ has full discretion to make findings as to the credibility of witnesses and evidentiary weight, which will not be disturbed when supported by substantial evidence. *Harding v. Workers' Compensation Appeal Board (Arrowhead Industrial)*, 706 A.2d 896 (Pa.Cmwlth.1998). Substantial evidence has been defined as such evidence that a reasonable mind might accept as adequate to support a conclusion. *Gann v. Workers' Compensation Appeal Board (MBS Management/Wellington East Development)*, 792 A.2d 701 (Pa.Cmwlth. 2002), *appeal denied*, 572 Pa. 738, 815 A.2d 635 (2003).

■ North Lebanon first argues that Harbaugh was not acting as North Lebanon's employee at the time of his death, and it asserts that Lebanon County's Mutual Aid Agreements apply only to participating organizations and do not authorize individuals, even fire policemen, to act on their own initiative. Moreover, Harbaugh acted either as a "Good Samaritan" or he formed a temporary employment relationship with North Cornwall by operation of the "emergency exception rule." In either scenario, he acted outside the scope of his employment with North Lebanon, which is not responsible for workers' compensation benefits.

**2.** Sections 301(e) and 301(f) provide in part that if an employee, immediately before the date of disability, was employed in an occupation in which the occupational disease as defined in Section 108(*o*), 77 P.S. § 27.1(*o*), is a hazard, it shall be presumed that the occupational disease arose out of and in the course of employment, but the presumption shall *not* be conclusive.

Section 601 of the Act, added by Section 15 of the Act of December 5, 1974, P.L. 782, 77 P.S. § 1031, defines special classes of employees eligible for workers' compensation benefits:

(a) In addition to those persons included within the definition of the word "employe" as defined in section 104, "employe" shall also include:

(1) members of volunteer fire departments or volunteer fire companies, including any paid fireman who is a member of a volunteer fire company and performs the services of a volunteer fireman during off-duty hours, who shall be entitled to receive compensation in case of injuries received while actively engaged as a firemen or while going to or returning from a fire which the fire company or fire department attended including travel from and the direct return to a fireman's home, place of business or other place where he shall have been when he received the call or alarm or while participating in instruction fire drills in which the fire department or fire company shall have participated or while repairing or doing other work about or on the fire apparatus or buildings and grounds of the fire company or fire department upon the authorization of the chief of the fire company or fire department or other person in charge *or while answering any emergency calls for any purpose* or while riding upon the fire apparatus which is owned or used by the fire company or fire department or while performing any other duties of such fire company or fire department as authorized by the municipality or while performing duties imposed by section 15, act of April 27, 1927 (P.L. 465, No. 299), referred to as the Fire and Panic Act;

. . . .

(b) In all cases where an injury which is compensable under the terms of this act is received by an employe as defined in this section, there is an irrebuttable presumption that his wages shall be at least equal to the Statewide average weekly wage for the purpose of computing his compensation.... (Emphasis added.)

The Court is cognizant that the fundamental object of all statutory interpretation is to ascertain and to effectuate the intent of the General Assembly. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a); *New Bethlehem Volunteer Fire Co. v. Workmen's Compensation Appeal Board (Kemp)*, 654 A.2d 267 (Pa.Cmwlth.1995). In a fatal claim proceeding involving a volunteer firefighter under the applicable occupational disease statute, *Bley v. Department of Labor and Industry*, 484 Pa. 365, 369–370, 399 A.2d 119, 121–122 (1979), Supreme Court Justice Larsen expressed the sentiment that "[i]n interpreting [that] Act, it is rather inconceivable that the legislature did not want to give all firemen an equal degree of comfort; that is, a knowledge that if they should die in the line of duty, their loved ones will be compensated in some manner."

This Court previously noted that "[i]t is apparent that the legislative intent of Section 601 is that should a volunteer fireman, who is injured in the line of duty, not otherwise be entitled to benefits ... the statute ensures that he/she does not receive workers' compensation benefits in an amount less than the statewide average." *Appleby v. Workers' Compensation Appeal Board (Franklin Township)*, 719 A.2d 843, 846 (Pa.Cmwlth.1998) (quoting *New Bethlehem Volunteer Fire Co.*, 654 A.2d at 270). The plain language of Section 601 reflects the notion that persons serving in specific volunteer capacities are due special consid-

eration because of their contributions to the safety and welfare of others. *See also White Haven Borough v. Workmen's Compensation Appeal Board (Cunningham),* 92 Pa.Cmwlth.123, 498 A.2d 1003, 1006 (1985) ("volunteer firemen have been specifically favored by the Legislature and the Court of Pennsylvania.").

The status conferred upon Harbaugh is consistent with the Mutual Aid Agreement, which explicitly recognizes assistance to neighboring jurisdictions:

> 1. The Political Subdivisions of Lebanon County agree to furnish Emergency Services, as defined in Section 102 of the Emergency Management Services Code, to each other upon request, upon a non-reimbursable basis.[ ] No Political Subdivision of Lebanon County shall present any claim of any nature against any other Political Subdivision of Lebanon County for compensation for any loss, damage, personal injury or death occurring in consequence of the performance of the services called for in this Agreement.

North Lebanon, Exhibit D–1R at p. 1. The Agreement also provides in paragraph 2(e) that it shall apply to emergency circumstances and/or situations, including:

> Responses to incidents (actual or imminent) which endanger the health, safety or welfare of the public and which require the use of special equipment, trained personnel or personnel in larger numbers than are locally available in

order to reduce, counteract or remove the danger caused by the incident[.]

*Id.* at p. 2. Subparagraph 2(e) does not require formal dispatch to become operative, and it contemplates exactly the type of scenario that occurred here. An emergency situation occurred, a serious automobile accident, in a neighboring township, which endangered the safety and welfare of individuals in the locality. Clemens and Miller credibly testified that the accident required the response of trained emergency personnel, and it occurred at a time of day and in a jurisdiction where there was a general shortage of such personnel. In responding, Harbaugh employed his special training as a volunteer fire policeman with North Lebanon.[3]

█ In conclusion, the WCJ accepted as credible the testimony that Miller offered on the issue of the history and meaning of the Mutual Aid Agreement, and that testimony provides substantial competent evidence to support the WCJ's finding that North Lebanon is liable for the payment of workers' compensation benefits. The WCJ found that fire policemen occasionally respond to emergencies without a formal dispatch, that it is recognized that they have a duty to respond to emergency situations, that the Mutual Aid Agreement applied to individual emergency personnel and to employing organizations and that one of its purposes was to ensure that volunteer emergency workers had workers' compensation coverage. The Court may not disturb the WCJ's findings based on that testimony.[4] *Mitchell; Harding;*

---

3. North Lebanon cites *Borough of Phoenixville v. Workmen's Compensation Appeal Board (Colledge),* 146 Pa.Cmwlth.453, 606 A.2d 578 (1992), for the proposition that when, during an emergency, an employee solicits the help of a non-employee to accomplish some purpose of the employer, a temporary employment relationship is formed for purposes of the Act. Although *Borough of Phoenixville* correctly states that rule, in that case the injured

individual was a private citizen rather than a trained, volunteer emergency-service employee such as Harbaugh, whose status was accorded special protection under Section 601 and the Mutual Aid Agreement.

4. The Court notes that North Lebanon raised the notice issue in its answer to the claim petition, but it failed to object to the WCJ's finding that Miller gave North Lebanon notice

*Gann.* Finding no reversible error, the Court accordingly affirms the order of the Board.

### ORDER

AND NOW, this 18th day of July, 2003, the order of the Workers' Compensation Appeal Board is hereby affirmed.

of the claim. Thus the issue was waived. In any case, the information that Miller provided to North Lebanon was sufficient to satisfy the Act's notice requirements. *See* Sections 311 and 312 of the Act, 77 P.S. §§ 631 and 632. On the issue of the applicability of a statutory presumption, Dr. Deron opined without rebuttal that Harbaugh's death was directly induced by his work-related activities. Therefore, the Board did not err in applying the statutory presumption in Section 301(e) and *Section* 301(f) to this case. Finally, North Lebanon's argument that Claimant had to show that Harbaugh's death was caused by abnormal working conditions, i.e., that she was asserting a "mental-physical" injury, is contradicted by the medical evidence. *US Airways v. Workers' Compensation Appeal Board (Panyko),* 779 A.2d 1233 (Pa.Cmwlth. 2001). Dr. Deron testified that it was the *physical* stress of the heat, humidity and traffic control that caused Harbaugh's death. In addition, because North Lebanon did not assert below that this was a case of mental-physical injury, that argument likewise was waived.