### KEYS–PEALERS, LTD./PEALER'S FLOWERS, Petitioner,

v.

### WORKERS' COMPENSATION APPEAL BOARD (BRICKER) Respondent.

Commonwealth Court of Pennsylvania.

Submitted Dec. 17, 2004.

Decided Jan. 4, 2005.

Publication Ordered March 18, 2005.

---

Mark J. Powell, Harrisburg, for petitioner.

Judson B. Perry, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge, and LEADBETTER, Judge.

OPINION BY Judge PELLEGRINI.

Keys–Pealers, Ltd./Pealer's Flowers (Employer) appeals from an order of the Workers' Compensation Appeal Board reversing the decision of the Workers' Compensation Judge (WCJ) granting the petition filed by Employer to modify workers' compensation benefits being paid to Robert Bricker (Claimant).

Claimant sustained a low-back injury on September 22, 1999, while working for Employer for which he received workers' compensation benefits. He underwent surgery for that injury approximately one year later and was given physical restrictions after surgery. While off work from his job with Employer, Claimant took a job with another employer but did not report his wages to Employer's insurance carrier. He was convicted of insurance fraud, was placed under house arrest in February of 2002, and, as a result, his benefits were

suspended by Employer's insurance carrier. Claimant was fully released from house arrest on May 14, 2002. Subsequently, Employer filed suspension and modification petitions alleging that Claimant was capable of returning to alternative employment that he failed to pursue while under house arrest.[1]

At the hearing before the WCJ, Richard Burchfield, Employer's vocational expert, testified that he referred two jobs to Claimant[2] that were approved by Claimant's physician as being within his physical limitations and met the standard set forth in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)* and which Claimant agreed he was interested in applying for:[3] 1) BJ's Wholesale at $6 per hour for 15 or 20 hours per week or $90 to $120 per week; and 2) Texaco Food Mart at $7 per hour for 15 hours per week or $105 per week. Mr. Burchfield testified that the job referrals were mailed to Claimant with the job referral for the position at BJ's requesting Claimant to appear to fill out an application on Wednesday, February 27, 2002, at 11:00 a.m. and the Texaco Food Mart position requesting that Claimant appear to fill out an application on Friday, March 1, 2002, at 9:00 a.m. Mr. Burchfield testified that Claimant called him and told him that he could not apply for those jobs because he was under house arrest.

In his defense, Claimant verified that he received the job referrals in the mail while under house arrest and could not apply for those jobs. He testified that upon receiving the job referrals, he called Mr. Burchfield and explained to him that he could not apply for the jobs because he was under house arrest with a monitor on his foot and was not allowed to leave the house for about three months. However, Claimant admitted that he was permitted to leave his home on Wednesdays and Fridays from 7:30 a.m. to 10:00 a.m. and every morning and evening for 15 minutes to attend to personal business. During that time, Claimant stated he did his shopping and his laundry. Regarding the job referrals, he stated that even though he could go out of the house to go to the Texaco job referral on Friday at 9:00 a.m., he did not go because he did not think he could fill out the application in enough time and he wanted to be home before 10:00 so he would not violate his house arrest. As to the job at BJ's on Wednesday at 11:00 a.m., when asked why he didn't just pick up the phone and call the company to tell let someone know he couldn't make it at that time, he said he didn't think it was really important.

The WCJ concluded that Employer met its burden of referring two jobs to Claimant that had met the *Kachinski* standard, but because Claimant did not

1. Claimant filed penalty petitions alleging that Employer failed to reinstate his benefits after his release from house arrest and failed to timely pay his wage loss benefits.

2. Mr. Burchfield also testified regarding other jobs that were referred to Claimant, but those jobs are not at issue on appeal.

3. 516 Pa. 240, 532 A.2d 374 (1987). In *Kachinski*, our Supreme Court set forth the following standard for returning an injured employee to work: 1) an employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition; 2) the employer must then produce evidence of a referral (or referrals) to a then open job (or jobs) which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.; 3) the claimant must then demonstrate that he has in good faith followed through on the job referral(s), and 4) if the referral fails to result in a job, then the claimant's benefits should continue.

apply for those jobs due to his house arrest, Employer was entitled to a modification of benefits.[4] The WCJ stated in his decision:

> There was also a *Kachinski* type specific job referral. I felt the jobs were within Dr. Eagle's recommendations because Dr. Eagle specifically approved them. I thought defendant did its part of the *Kachinski* burden in referring the three jobs to the claimant.
>
> Claimant did not apply. I did not think that discharged claimant's good faith obligations. Since there was a criminal proceeding it would be claimant's actions that presented the difficulties of applying. While claimant did call Mr. Burchfield, he made no effort to get permission to apply for work or contact the employer. I thought that claimant had the obligation to make some effort to apply for the jobs and I thought, in effect, he took himself out of the workforce.

(WCJ's October 1, 2003 decision at 7.) Claimant appealed to the Board[5] which reversed this portion of the WCJ's decision because the two jobs were not available to Claimant when he was under house arrest. The Board noted that because Claimant was essentially incarcerated at the time the job offers were made, he was removed from the work force, and Employer's remedy was a suspension of Claimant's benefits during the time of incarceration of which Employer had already taken advantage and suspended Claimant's benefits for that period of time. Employer then filed this appeal.[6]

■ Employer argues[7] that even though Claimant was incarcerated, because he was only under house arrest, he was able to leave the house for periods of time for personal business. While Employer acknowledges that an employee who is incarcerated in a traditional prison cannot apply for a job because he is removed from the work force, *Henkels and McCoy, Inc. v. Workers' Compensation Appeal Board (Hendrie)*, 565 Pa. 493, 776 A.2d 951 (2001), it points out that Claimant was actually able to leave the house and could have been at the Texaco Foot Mart job referral at 9:00 a.m.

■ In *Mitchell v. Workers' Compensation Appeal Board (Steve's Prince of*

---

4. In a modification petition, the defendant must produce medical evidence of a change in the claimant's condition and evidence of referrals to then open jobs which fit into occupational categories for which the claimant has been given medical clearance. *Mariani and Richards v. Workers' Compensation Appeal Board (Kowalecki)*, 652 A.2d 420 (Pa. Cmwlth.1994). Once the defendant meets its burden, the burden shifts to the claimant to prove that he or she acted in good faith in applying for the job referrals and that the referrals failed to result in a job. *Id.*

5. Neither party appealed the WCJ's denial of the suspension petition or the penalty petitions.

6. Our scope of review of the Board's decision is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Schemmer v. Workers' Compensation Appeal Board (U.S.Steel)*, 833 A.2d 276 (Pa.Cmwlth.2003), *petition for allowance of appeal denied*, 578 Pa. 703, 852 A.2d 314 (2004).

7. Employer initially contends that the Board erred in reversing the WCJ's decision because Claimant was obligated to apply for the jobs which were referred to him pursuant to 37 Pa.Code § 451.117(b)(2) which requires an individual under house arrest to actively seek employment, and argues that Claimant failed to meet this requirement by refusing to respond to the job referrals. Claimant, however, correctly points out that Employer never raised this issue before the WCJ or Board, and because it failed to do so, has waived this argument on appeal. *See* Pa. R.A.P. 1551.

*Steaks)*, 572 Pa. 380, 815 A.2d 620 (2003), our Supreme Court held that while an employer shows good faith in providing an incarcerated claimant with job referrals, an incarcerated claimant does not show bad faith for failing to pursue job referrals while in prison. The Court explained:

> We reaffirm *Kachinski's* teaching that the obligation of the employer in an instance such as this remains "a good faith attempt to return the injured employee to productive employment, rather than a mere attempt to avoid paying compensation." (Citation omitted.) **The same circumstance that absolved the employer in *Banic* of the futile responsibility of showing job availability should absolve the claimant in a circumstance such as appellant's from having to engage in the pursuit of a job he cannot possibly accept because of his incarceration.** Here, as in *Banic*, the very principles that powered the decision in *Kachinski* make clear that the construct does not apply. (Emphasis added.)

*Id.* at 392, 815 A.2d at 627–628. While Claimant, here, was not in prison, the term "incarceration" does not only apply to confinement in a prison or jail, but also includes individuals who have been removed from the workplace as a result of that conviction so as to allow the suspension of benefits during the time they are incarcerated. *Henkels & McCoy*. *See also Flynn v. Workers' Compensation Appeal Board (Sovereign Staffing Source, Inc.)*, 776 A.2d 1043 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 567 Pa. 749, 788 A.2d 380 (2001) (individual in halfway house also considered incarcerated); *Brinker's International v. Workers' Compensation Appeal Board (Weissenstein)*, 721 A.2d 406 (Pa.Cmwlth.1998) (individual in alcohol recovery center considered incarcerated).

■ Whether a claimant whose benefits have been suspended must pursue job referrals while in some form of incarceration depends on the terms of the house arrest. In some programs, the convicted individuals are allowed to leave the house to attend job interviews or for other reasons while other programs do not allow those under house arrest to leave the house at all except for a limited amount of time to attend to necessary personal business. The terms of each house arrest program are tailored individually for each person convicted depending on the nature of the individual and his or her crime. The terms of the house arrest will determine whether a claimant is required to pursue a proffered position; whether a job is available is determined by whether it will be available after the end-date of the house release program so that the claimant can be available to begin working when the job's start date begins.

■ In this case, Claimant was under house arrest for approximately 21 hours per day. The other two-and-one-half hours he was allowed out of the house were to be used for personal needs, i.e., grocery shopping, laundry, etc. There was no indication that he had permission to attend job referrals or to go into a work program. Claimant testified that the only job referral he could attend within the time frame he was allowed out of the house was the one at Texaco Food Mart, but he did not believe he could drive there and be there by 9:00 a.m., fill out an application and return home by 10:00 a.m., the time imposed by his house arrest, without being in violation. (Reproduced Record at 157.) The other job referral was at a time when Claimant could not leave the house. Essentially, Claimant was presented with job referrals which were not available to him. Because under the circumstances presented he could not

pursue the job referrals, the jobs offered were not available to him and Claimant was not in violation of the law for not pursing them.

█ Employer then argues in the alternative that it was still entitled to a modification of benefits because it established that Claimant had "earning power" through its expert as required under *Allied Products and Services v. Workers' Compensation Appeal Board (Click)*, 823 A.2d 284 (Pa.Cmwlth.2003). In that case, we held that what is commonly referred to as Act 57[8] altered an employer's burden in a modification petition such that the employer no longer had to show the existence of an actual job referral. When Act 57 was enacted in 1996, an employer only had to show that the claimant was able to perform his previous job or that he could work in any other "substantial gainful employment" in his area of employment. To do that, we stated that the employer either had to offer a claimant a specific job that was available that the claimant could perform or establish earning power through an expert opinion which would include job listings with employment agencies, advertisements or agencies of the Department of Labor and Industry:

> "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area ... Proof of job availability by establishing "earning power" through expert opinion is not as structured as under prior law. However, an employer must still convince the fact-finder that

positions within the injured workers' residual capacity are actually available.

*Id.* at 287. *See also South Hills Health System v. Workers' Compensation Appeal Board (Kiefer)*, 806 A.2d 962 (Pa.Cmwlth. 2002). Here, Employer points out that Mr. Burchfield testified that there were two available positions that were vocationally suitable for Claimant to perform, and the WCJ found Mr. Burchfield credible regarding these positions. Because these jobs were available and vocationally suitable for Claimant, Employer contends that they established that Claimant had earning power and it was entitled to a modification of benefits.

What Employer fails to acknowledge, however, is that *Allied Products* did not deal with an incarcerated individual and the jobs were not available to Claimant because he remained incarcerated and was not able to perform those jobs. *See Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.)*, 550 Pa. 276, 705 A.2d 432 (1997) (when a claimant is incarcerated, his loss of earning power is caused by the imprisonment, not by the work-related injury). Therefore, despite Mr. Burchfield's testimony that there were jobs available to Claimant and he had "earning power," because Claimant could not physically leave his house to perform those jobs while he was under house arrest, and there was no evidence that those jobs would be available in May when his incarceration ended, Employer failed to meet its burden. Consequently, Employer is not entitled to a modification of benefits.

Accordingly, the order of the Board is affirmed.

### *ORDER*

AND NOW, this 4th day of January, 2005, the order of the Workers' Compensa-

---

8. Section 306 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512.

tion Appeal Board, dated July 19, 2004, at No. A03–2842, is affirmed.