**Linda MURETIC, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (DEPARTMENT OF LABOR AND INDUSTRY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 3, 2007.

Decided Sept. 24, 2007.

Reargument Denied Nov. 19, 2007.

Stephen A. Schneider, Harrisburg, for petitioner.

Todd C. Hough, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Linda Muretic (Claimant) petitions for review from an Order of the Workers' Compensation Appeal Board (Board) that affirmed the Decision of a Workers' Compensation Judge (WCJ) granting her Reinstatement Petition in part and denying her Review Petition(s). We affirm.

Claimant sustained an injury in the course and scope of her employment on September 23, 1994 after her left foot got caught as she was walking up a flight of stairs. The Commonwealth of Pennsylvania, Department of Labor and Industry (Employer) accepted injuries to her neck, left shoulder, left knee, and left elbow. She ceased working as of November 16, 1994 and thereafter had intermittent periods of earnings loss.

Claimant underwent an independent medical examination with Robert Dahmus, M.D., on November 27, 1996. He cleared her for sedentary duty. Claimant was subsequently arrested and incarcerated on charges of aggravated assault while driving under the influence of alcohol on December 6, 1996. On January 21, 1997, Employer, not knowing of Claimant's incarceration, offered her pre-injury job of Intermittent Clerk II. She did not return to work, however, because she was in prison awaiting trial. Claimant pled guilty on June 25, 1997 and received sentencing.

On May 30, 1997, Employer filed a Suspension Petition alleging that Claimant was offered employment within her restrictions and that she failed to pursue this offer in good faith. It also suspended benefits unilaterally pursuant to Section 306(a)(2) of the Pennsylvania Workers'

Compensation Act[1] (Act), 77 P.S. § 511(a)(2).[2] In a Decision dated March 31, 1998, the WCJ, relying on *Brown v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 134 Pa.Cmwlth.31, 578 A.2d 69 (1990), granted Employer's Suspension Petition and ordered benefits suspended as of January 21, 1997. He issued the following relevant Conclusions of Law:

7. This Judge concludes that the defendant has presented credible evidence in support of its suspension petition. Mr. Kerr testified that the claimant was offered the position of Intermittent Clerk II on January 21, 1997, and stated that she failed to report to work as the defendant requested due to her incarceration. Further, Mr. Kerr's testimony established that the job duties of an Intermittent Clerk II required no heavy lifting and involved simple tasks such as reviewing unemployment reports for discrepancies in payment amounts ...

8. This Judge concludes that the claimant failed to present any evidence or testimony to show that the Intermittent Clerk II position was not within her physical capabilities as of January 21, 1997.

9. Dr. Dahmus' report indicates that the claimant was physically capable of returning to work at a full-time, sedentary position. This Judge has reviewed the job description for an Intermittent Clerk II in conjunction with Dr. Dahmus' November 27, 1996 physical capacities checklist for the claimant, and now concludes that the position offered to the claimant on January 21, 1997 was within the claimant's physical capabilities had she applied for the position.

10. Further, this Judge concludes that even if the claimant does have a residual disability when she is released from her incarceration, *she will not be entitled to a reinstatement of her total disability benefits because she was offered a position within her physical restrictions for which she failed to apply.* Accordingly, any loss of earnings which the claimant may suffer after her release from prison will not be due to her work injury or a residual disability, but, instead, will be a result of her incarceration due to her guilty plea to the felony charge of aggravated assault while driving under the influence of alcohol. (Emphasis Added)

(Dec. dated 3/31/98).

Claimant was incarcerated from December 8, 1996 through March 28, 2000. She believed that her condition grew worse during her time in jail and sought medical treatment upon her release. She filed a Reinstatement Petition on July 17, 2000 that was denied by the WCJ on May 9, 2002. In his Decision, he found that Claimant's condition did not worsen to the point she could no longer perform sedentary duty.[3]

Claimant filed the instant Reinstatement Petition on April 26, 2004 alleging her injury again caused a decrease in her earning power as of January of 2003. On that same date, she filed a Review Petition seeking to amend her injury description to include a low back injury and a psychological injury.[4]

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

2. Section 306(a)(2) of the Act, provides that "nothing in this act shall require payment of compensation ... for any period during which the employee is incarcerated after a conviction...."

3. Claimant appealed this Decision to the Board, but later withdrew her appeal.

4. Claimant filed a duplicate Review Petition on April 27, 2004. She later withdrew her claim for psychological injuries.

By a Decision circulated June 22, 2005, the WCJ denied Claimant's Review Petition(s) concluding that she failed to meet her burden of proving that her injury description should be amended to include additional injuries. The WCJ granted Claimant's Reinstatement Petition in part, however, and reinstated Claimant's benefits as of May 12, 2003 following surgery to her left elbow. He found that Claimant was capable of resuming work previously found available on September 8, 2004. As such, the WCJ suspended benefits as of that date explaining that "when it is established that work would have been available except through claimant's actions, the defendant doesn't have to show work availability but merely physical capacity." For all other times in question, the WCJ determined that Claimant failed to establish her condition worsened to the point she could no longer perform the Intermittent Clerk II position previously found available.

Claimant appealed to the Board which affirmed in an Opinion dated April 2, 2007. In affirming the WCJ's finding that Claimant's benefits should be suspended as of September 8, 2004, the Board stated as follows:

The WCJ's March 31, 1998 Decision suspended Claimant's benefits because she refused, in bad faith, to accept the job offered by Defendant on January 21, 1997. Under these circumstances, Defendant was not required to reestablish job availability in order to suspend Claimant's benefits. *J.A. Jones Construction Co.* Rather, Defendant was entitled to a suspension of benefits when Claimant's medical condition returned to baseline. The WCJ accepted as credible Dr. Dahmus' opinion that Claimant

could perform the duties of her pre-injury job as of September 8, 2004. Consequently, Defendant established that Claimant's medical condition returned to baseline as of that date, and therefore, the WCJ properly suspended her benefits.

(Op. dated 4/2/07, p. 4).

Claimant filed a Petition for Review of the Board's Order with this Court on April 26, 2007.[5] On appeal, Claimant argues that the Board erroneously found she acted in bad faith when she failed to return to the Intermittent Clerk II and that her benefits could be suspended without a showing of job availability as of September 8, 2004. She contends that the WCJ never made any reference to her acting in bad faith in his March 31, 1998 Decision and that the Board incorrectly imputed such a finding. We reject Claimant's argument.

■ In general, when an employer seeks to modify or suspend a claimant's benefits, it must produce evidence of a referral to an available job that is within the limitations of claimant's disability. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). If the employer produces this evidence, then the claimant must show that she acted in good faith to follow through on the job referral. *Id.* at 252, 532 A.2d at 380. If the claimant fails to make such a showing, then her benefits can be modified. *Id.*

In *Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.)*, 550 Pa. 276, 705 A.2d 432 (1997), the Supreme Court reiterated the premise that the four prong analysis of *Kachinski* is not to be rigidly applied in situations where an employer seeks to suspend a claimant's benefits because her loss of earning power

tional rights were violated. *Guthrie v. Workers' Compensation Appeal Board (Travelers' Club, Inc.)*, 854 A.2d 653 (Pa.Cmwlth.2004).

is no longer caused by her work-related injury but rather by something unrelated to the work injury. It held that the *Kachinski* test did not apply when an employer seeks to suspend benefits because of incarceration since the employer is not required to demonstrate that claimant has recovered some ability or that available jobs were referred to the claimant. *Id.* at 286, 705 A.2d at 437. We point out that there were no job referrals made in *Banic*. Rather, the actual issue decided was whether a claimant's benefits could be suspended solely on her incarceration prior to the effective date of amended Section 306(a)(2) of the Act, amended by Act 44.[6]

In *Mitchell v. Workers' Compensation Appeal Board (Steve's Prince of Steaks)*, 572 Pa. 380, 815 A.2d 620 (2003), the Supreme Court specifically held that a claimant does not act in bad faith in failing to pursue a job referral while incarcerated.[7] Specifically, it stated that "the Act makes clear that the disentitlement to benefits while incarcerated after conviction extends only to the period of incarceration itself, and ... the *Kachinski* guidelines cannot be invoked to secure a permanent cessation of benefits during incarceration." *Id.* at 392, 815 A.2d at 628. The employer, in *Mitchell*, did in fact attempt to suspend claimant's benefits by referring him to "available" positions while he was incarcerated in addition to simply seeking a suspension under Section 306(a)(2) of the Act.

At first blush, the rules established in *Banic* and *Mitchell* seemingly indicate that

the Board did err in stating that Claimant's benefits were suspended based on a bad faith pursuit of an available job in the WCJ's 1998 Decision. Claimant's argument must fail, however, because, as noted above, the WCJ relied on *Brown* in rendering his adjudication. In *Brown*, the claimant's benefits were suspended because there was available work within his restrictions that he could perform with no loss of earnings but for the fact that he was in prison. *Brown*, 578 A.2d at 71. We emphasize that the reason for the suspension in that case was not the fact that he was incarcerated. He was incarcerated in May of 1983. Yet, it was held that the employer was entitled to a suspension as of July 14, 1986.

Based on the WCJ's interpretation of *Brown*, he ordered Claimant's benefits suspended as Employer met its burden of proving that it offered her a job within her physical restriction and that she failed to pursue the job due to her incarceration. We acknowledge that the WCJ never actually used the term "bad faith" in his Decision. Notwithstanding his failure to use "magic words," it is wholly evident that he went through a *Kachinski* analysis in determining Claimant's benefits should be suspended.[8] Claimant did not appeal this Decision. Therefore, the Board did not err in indicating that the WCJ found she acted in bad faith in failing to pursue the offered Intermittent Clerk II position.[9]

Claimant next argues that the WCJ erred when he stated that Employer did

6. Act of July 2, 1993, P.L. 190, No. 44.

7. In so holding, the Supreme Court reversed this Court's Decision in *Mitchell v. Workers' Compensation Appeal Board (Steve's Prince of Steaks)*, 734 A.2d 945 (Pa.Cmwlth.1999).

8. Although the WCJ interpreted our *Brown* Opinion as a tacit approval of the use of the *Kachinski* standard in the handling of a suspension petition in the context of a claimant's

incarceration, this is not necessarily the case. Indeed, the applicability of *Kachinski* was not at issue in *Brown*. The actual issue decided was whether the WCJ in that case erred in terminating the claimant's benefits as opposed to suspending them when there was no finding that his disability had ceased.

9. The Board found that because Claimant was previously found to have acted in bad faith, she was collaterally estopped from relying on

not have to show work availability as of September 8, 2004 in light of the fact that she returned to baseline following her May 12, 2003 surgery. We disagree.

■ An employer is not required to keep an available job open indefinitely once a claimant refuses it in bad faith. *Spinabelli v. Workmen's Compensation Appeal Board (Massey Buick, Inc.)*, 149 Pa.Cmwlth.362, 614 A.2d 779 (1992), *appeal denied*, 533 Pa. 654, 624 A.2d 112 (1993). When a claimant's benefits are modified based on her bad faith effort to pursue an available job within her restrictions, she must establish that her medical condition has deteriorated to a point that she could no longer have performed the job she was offered in order to obtain a reinstatement of benefits. *Cyprus (RAG) Cumberland Resources v. Workers' Compensation Appeal Board (Stewart)*, 767 A.2d 1151 (Pa.Cmwlth.2001). An employer

is not required to reestablish job availability following a period of temporary total disability when the claimant originally refused a job offer in bad faith. *J.A. Jones Constr. Co. v. Workers' Compensation Appeal Board (Nelson)*, 784 A.2d 280 (Pa. Cmwlth.2001), *appeal denied* 568 Pa. 708, 796 A.2d 987 (2002).

We have indicated that the WCJ suspended Claimant's benefits in his 1998 Decision because she failed to pursue the Intermittent Clerk II position in good faith. In the Decision subject to this appeal, the WCJ found Claimant was entitled to a period of total disability following her left elbow surgery in 2003 but that she returned to baseline levels as of September 2004. Thus, pursuant to *J.A. Jones,* Employer was not required to reestablish job availability and the WCJ did not err.[10]

■ Claimant further contends that the evidence of record does not establish she

the Supreme Court's Decision in *Mitchell* to support her argument that she did not act in bad faith in pursuing the previously offered job. Collateral estoppel prohibits the litigation in a later cause of action of issues of law or fact that were actually litigated and necessary to a previous final judgment. *Henion v. Workers' Compensation Appeal Board (Firpo & Sons)*, 776 A.2d 362 (Pa.Cmwlth.2001). These elements are met in the instant case and the Board was correct in determining as much. Claimant, relying on *Borough of Prospect v. Bauer*, 715 A.2d 1244 (Pa.Cmwlth. 1998), contends that she should not be estopped from arguing the bad faith issue because there has been a change in the law. The *Bauer* Court referenced Section 28(2) of the *Reinstatement (Second) of Judgments* (1982) that provides that relitigation of an issue is not prohibited "when the issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." Here the two actions are not substantially unrelated. Both proceedings concerned Claimant's right to receive indemnity benefits. Moreover,

Claimant had the benefit of the Supreme Court's Decision in *Mitchell* upon the filing her appeal of the WCJ's May 9, 2002 Decision that contained many similar issues as the one currently on appeal before us. She withdrew this appeal, however, thereby waiving any argument that collateral estoppel should not apply so as to avoid inequitable administration of the laws.

10. The WCJ, in Conclusion of Law No. 2, stated "[i]t was established that work was available and Claimant could perform work as of September 8, 2004." Claimant asserts that Employer made no showing of job availability and that her benefits should not have been suspended as of that date. As we have stated above, Employer did not have to reestablish job availability. *J.A. Jones.* Moreover, a fair reading of the WCJ's Decision as a whole reveals that he did not intend to convey that Employer attempted to suspend Claimant's benefits as of September 2004 by producing evidence of an available job within her restriction. Rather, he was referencing the Intermittent Clerk II job she failed to pursue in good faith and the fact that she is still bound by that act. While the WCJ may have used unartful language in issuing this Conclu-

was physically capable of performing the Intermittent Clerk II job as of September 8, 2004. We reject this argument.

Employer presented the testimony of Dr. Dahmus, board certified orthopedic surgeon, who evaluated Claimant in November of 1996, November of 2000, and September of 2004. Dr. Dahmus explained that Claimant could have worked in a sedentary position up until her surgery of May 12, 2003. He agreed that Claimant was unable to work following the surgery. Nonetheless, he testified as of his September 8, 2004 examination that she was capable of sedentary light duty just as she had been following his previous examinations. The WCJ found this testimony credible.[11] As Claimant's benefits were based on Dr. Dahmus' testimony in the 1998 Decision and he testified that her current physical capabilities regarding her ability to work were essentially the same, the WCJ did not err in concluding that she was again physically capable of performing the Intermittent Clerk II job as of September 2004.[12]

◼ Claimant, in her Petition for Review, also contends that the WCJ erred in

finding Employer presented a reasonable contest. Nonetheless, she fails to address this issue in either her statement of questions or argument section of her brief. As such, this issue is waived consistent with Pa. R.A.P. 2116(a)[13] and Pa. R.A.P. 2119(a).[14] *AT&T v. Workers' Compensation Appeal Board (DiNapoli)*, 816 A.2d 355, 361 (Pa.Cmwlth.2003); *LP Water & Sewer Co. v. Pennsylvania Pub. Util. Comm'n*, 722 A.2d 733, 738 (Pa.Cmwlth. 1998); *Watkins v. Unemployment Compensation Board of Review*, 689 A.2d 1019 (Pa.Cmwlth.1997).

Based on our review, we conclude the Board did not err in affirming the WCJ's June 22, 2005 Decision. Accordingly, the Order of the Board is affirmed.

### *ORDER*

AND NOW, September 24, 2007, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

---

sion of Law, he did not commit reversible error.

11. The WCJ is the final arbiter of witness credibility and the weight to be accorded evidence and may accept or reject the testimony of any witness in whole or in part. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa. Cmwlth.1995).

12. Claimant contends that Dr. Dahmus did not review a job description and did not specifically approve the Intermittent Clerk II position in this current round of litigation. A physician must establish guidelines for the work an employee is capable of performing. *Lukens v. Workmen's Compensation Appeal Board (Williams)*, 130 Pa.Cmwlth.479, 568 A.2d 981 (1989). He need not, however, provide specific approval for a certain position. *Id.* at 984.

13. Pa. R.A.P. 2116(a) provides, in pertinent part:

(a) General rule. The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind ...

14. Pa. R.A.P. 2119(a) provides, in relevant part:

(a) General rule. The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.