# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Roy Carlson,  :
                Petitioner  :
                  :
            v.  :    No. 1198 C.D. 2019
                  :
St. Luke's Quakertown Hospital  :
(Workers' Compensation Appeal  :
Board),  :
                Respondent  :

Matthew Roy Carlson,  :
                Petitioner  :
                  :
            v.  :    No. 962 C.D. 2020
                  :    Submitted: November 20, 2020
St. Luke's Quakertown Hospital  :
(Workers' Compensation Appeal  :
Board),  :
                Respondent  :

BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                **HONORABLE P. KEVIN BROBSON,** Judge
                **HONORABLE CHRISTINE FIZZANO CANNON,** Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED: December 22, 2020**

Matthew Roy Carlson (Claimant) petitions for review of the August 7, 2019 identical Orders of the Workers' Compensation (WC) Appeal Board (Board), which affirmed the identical July 2, 2018 and July 6, 2018 Decisions of a WC Judge (WCJ) denying St. Luke's Quakertown Hospital's (Employer) First Petition

to Terminate Compensation Benefits (Termination Petition) and Claimant's Petition to Review Compensation Benefits (Review Petition), but granting Employer's Second Termination Petition and Petition to Suspend Compensation Benefits (Suspension Petition).[1] Before this Court, Claimant essentially challenges the WCJ's decision to allow litigation of the Second Termination Petition and Suspension Petition before issuing a decision on the First Termination Petition and the Review Petition, and argues that because of the procedural posture, he was not aware if the higher evidentiary burden required by *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 919 A.2d 922, 926 (Pa. 2007), would apply. In *Lewis*, our Supreme Court determined that "where there have been prior petitions to modify or terminate benefits, the employer must demonstrate a change in physical condition since the last disability determination." *Id.* Discerning no error, we affirm.

## I. Factual Background and Procedure

On November 4, 2014, while employed as a magnetic resonance imaging (MRI) technologist for Employer, Claimant sustained a low back injury during the transfer of a patient from a wheelchair to an MRI table. Specifically, Claimant was

---

[1] The Board circulated identical Orders, one appearing at Appeal Case No. A18-0795 and the second at Appeal Case No. A18-0796. Claimant's Petition for Review filed at No. 1198 C.D. 2019 identified only the Board's Order entered at Appeal Case No. A18-0795 as the Order to be reviewed. However, upon review of the filings at No. 1198 C.D. 2019, it appeared to the Court that Claimant sought review of both of the Board's identical Orders. By Order dated September 3, 2020, the Court ordered that the filing date of the Petition for Review at No. 1198 C.D. 2019 would be preserved should Claimant file an additional petition for review of the Board's Order at Appeal Case No. A18-0796. In response, Claimant filed a second Petition for Review at No. 962 C.D. 2020. By Order dated November 17, 2020, the Court consolidated the two Petitions for Review.

injured while catching a falling patient. Employer filed a Notice of Temporary Compensation Payable on November 24, 2014, identifying Claimant's injury as low back strain and providing disability compensation at a weekly rate of $932.00. The Notice of Temporary Compensation Payable converted to a Notice of Compensation Payable (NCP) by operation of law.

A. First Termination Petition and Review Petition

Employer filed its First Termination Petition on June 12, 2015, therein alleging that based upon the independent medical examination (IME) performed by Scott Naftulin, D.O., as of March 2, 2015, Claimant had fully recovered from the November 4, 2014 injury. (No. 1198 C.D. 2019 Certified Record (C.R.) Item 2.) Claimant filed an Answer denying that allegation and requesting unreasonable contest attorney's fees in accordance with Section 440 of the WC Act,[2] 77 P.S. § 996. (C.R. Item 4.) On August 11, 2015, Claimant filed the Review Petition seeking to alter the NCP's description of his injury to include "aggravation of lumbar degenerative disc disease injury." (C.R. Item 5.) Employer filed an Answer denying that the description of Claimant's injury should be altered in that way. (C.R. Item 7.) The matters proceeded to a hearing before a WCJ.

In support of its First Termination Petition and in opposition to the Review Petition, Employer presented the deposition testimony of Dr. Naftulin,[3] who is licensed to practice medicine in the Commonwealth of Pennsylvania and is board certified in physical medicine and rehabilitation, IMEs, family practice, and pain

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 3 of the Act of February 8, 1972, P.L. 25.

[3] Dr. Naftulin's November 2, 2015 deposition testimony can be found on pages 44a-57a of the reproduced record and is summarized in finding of fact 10.

3

medicine. During his testimony, Dr. Naftulin noted that Claimant's medical history revealed extensive previous back issues, including a "lumbosacral fusion," a diagnosis of "failed back syndrome," a disc herniation, and a diagnosis of degenerative disc disease, all of which predated the November 4, 2014 injury at issue. (Nov. 2, 2015 Deposition (Dep.) Transcript (Tr.) at 14, 17, 23-24; WCJ Decisions, Finding of Fact (FOF) ¶ 10(c).) Dr. Naftulin stated that the symptoms of which Claimant complained at the examination were similar to the symptoms Claimant experienced with his preexisting condition before the injury at issue. (FOF ¶ 10(g).) Based upon his March 2, 2015 examination of Claimant and his review of Claimant's medical history and records, Dr. Naftulin opined that Claimant had fully recovered from the November 4, 2014 injury as of March 2, 2015. (*Id.* ¶ 10(h).) Dr. Naftulin explained his reasoning as follows:

> [T]he mechanism of [the November 4, 2014] injury would be a plausible cause for the lumbar sprain and strain. But [Claimant's] clinical presentation at the time of my examination was consistent with [Claimant's] preexisting conditions as documented throughout [Claimant's medical] records . . . . And the information provided, including imaging studies done both prior and subsequent to the work injury, revealed no material change or aggravation of his preexisting condition. And without objective evidence of the ongoing lumbar strain/sprain that was accepted, it was felt that [Claimant's] condition was fully explained by [Claimant's] preexisting condition . . . .

(Nov. 2, 2015 Dep. Tr. at 30-31.) When asked specifically whether the November 4, 2014 injury aggravated Claimant's preexisting condition, as Claimant alleged in his Review Petition, Dr. Naftulin again opined that it did not, explaining "[i]maging studies . . . done before and after the [November 4, 2014] injury really revealed no substantial change" to support the alleged aggravation of Claimant's preexisting condition. (*Id.* at 31-32.)

4

Claimant offered his own testimony,[4] as well as the deposition testimony of one of his treating physicians, Nirav Shah, M.D., in opposition to the First Termination Petition and in support of the Review Petition. Claimant testified that on November 4, 2014, he was transferring a patient from a wheelchair to an MRI table when she began to fall. (FOF ¶ 5(a-b).) Claimant stated that he was injured while catching the patient. (*Id.*) According to Claimant, he has not fully recovered from the November 4, 2014 injury and is still in pain from that injury. (*Id.* ¶ 5(i)(c).) Claimant testified that he did not believe the November 4, 2014 injury worsened or aggravated his preexisting symptoms or conditions. (Jan. 25, 2017 Hr'g Tr. at 18.) Rather, the injury at issue is to a different part of his back than his preexisting back conditions. (FOF ¶ 5(i)(d).)

Dr. Shah,[5] who is licensed in the Commonwealth of Pennsylvania and is board certified in neurosurgery, testified that Claimant's medical history and records reveal an "extensive back history," including undergoing back surgery in 2013. (Feb. 10, 2016 Dep. Tr. at 8; FOF ¶ 8(b).) Based upon Claimant's medical history and records, as well as Dr. Shah's two physical examinations of Claimant, Dr. Shah opined that as a result of the November 4, 2014 injury, Claimant suffered from an "aggravation of his pre[]existing lumbar condition with significant aggravation of his low back pain, and radiculopathy for the lumbar, as well as new onset thoracic pain with associated thoracic radiculopathy." (Feb. 10, 2016 Dep.

---

[4] Claimant testified before a WCJ on four different occasions: November 18, 2015; January 25, 2017; March 20, 2017; and August 10, 2017. Claimant's testimony can be found on pages 174a-255a of the reproduced record and is summarized in findings of fact 5, 5(i), 6, and 7. The WCJ's Decisions contain two number 5s and two number 11s, and we will identify the second of each as 5(i) and 11(i).

[5] Dr. Shah's February 10, 2016 deposition testimony can be found on pages 76a-145a of the reproduced record and is summarized in finding of fact 8.

5

Tr. at 14.) Dr. Shah agreed that while an MRI taken after the November 4, 2014 injury revealed no changes from an MRI taken before the November 4, 2014 injury, he explained that "[y]ou do not have to have an anatomical change on an MRI to diagnose an aggravation injury." (Feb. 10, 2016 Dep. Tr. at 14-15.) Dr. Shah concluded that Claimant could not return to his pre-injury position and has a permanent partial disability from the November 4, 2014 injury. (*Id.* at 15-16, 18-19; FOF ¶ 8(f).)

The parties submitted briefs in support of their positions, and the record was closed on the First Termination Petition and Review Petition. However, before WCJ Doneker entered a decision on the First Termination Petition, the parties reached a tentative settlement agreement. Then, WCJ Doneker retired before the tentative settlement agreement was approved, and the matter was reassigned to WCJ Doman on October 18, 2016. The tentative settlement agreement was listed as a potential Petition for Approval of a Compromise and Release Agreement before WCJ Doman. This changed at a hearing held on January 25, 2017, where the parties indicated that the Petition for Approval of a Compromise and Release Agreement could be marked as withdrawn, as the tentative settlement agreement was no longer agreeable, and the parties would proceed to a decision on Employer's First Termination Petition and Claimant's Review Petition. (Jan. 25, 2017 Hr'g Tr. at 5.)

B. Suspension Petition

On January 4, 2017, Employer offered Claimant a modified-duty position "assembling admission packets," at a wage higher than Claimant's pre-injury wage. (C.R. Item 32.) Claimant returned to work in that capacity on January 18,

6

2017, working full time. After working three weeks in that position, Claimant presented a doctor's note restricting him to four hours of work per day. Claimant's hours were subsequently reduced from eight to four hours per day as a result of the doctor's note. Thereafter, Employer filed the Suspension Petition seeking to suspend Claimant's WC benefits as of January 18, 2017, stating that "[C]laimant was offered an opportunity to return to work in a modified[-]duty position." (Supplemental Reproduced Record (S.R.R.) at 266b.) In support of its Suspension Petition, Employer submitted the deposition testimony of two of its employees. Employer presented the deposition testimony of its WC administrator,[6] who testified that Claimant was offered "a full-time sedentary job as an admissions packet assembler," Claimant returned to work in that position at a wage higher than his pre-injury wage, and "he had no problem with [] Claimant's work" in that position. (FOF ¶ 11(i).) Employer also presented the deposition testimony of Employer's network director for volunteer services,[7] who testified that "she was involved in locating the position to which [Claimant] returned." (*Id.* ¶ 12.) She also testified that Claimant presented a doctor's note, dated **June 2015**, on **February 10, 2017**, stating Claimant could only work four hours a day. (*Id.*)

During his testimony, Claimant confirmed he returned to work in this position, but explained he began increasing his pain medications after three weeks, which led him to present the doctor's note restricting his work to four hours per day. (*Id.* ¶ 6.) He further testified that, as of August 10, 2017, he had received a raise and continues to work 20 hours per week. (*Id.* ¶ 7.)

[6] The testimony of Employer's WC administrator can be found on pages 138b-58b of the supplemental reproduced record and is summarized in finding of fact 11(i).

[7] The testimony of Employer's network director for volunteer services can be found on pages 187b-202b of the supplemental reproduced record and is summarized in finding of fact 12.

C. Second Termination Petition

Employer filed the Second Termination Petition on May 23, 2017. The parties litigated the Second Termination Petition during the pendency of the First Termination Petition and Review Petition. While litigating the Second Termination Petition, Employer allegedly filed seven Notification of Suspension/Modification Petitions, to which Claimant responded by filing Challenge Petitions. The WCJ eventually issued an interlocutory order on September 25, 2017, confirming Employer's obligation to pay partial disability benefits. (Sept. 25, 2017 Order.)

In the Second Termination Petition Employer alleged that, based upon a second IME performed by Dr. Naftulin, Claimant had fully recovered from the work-related low back strain and was capable of returning to work as of May 16, 2017. (S.R.R. at 269b.) As support for its Second Termination Petition, Employer submitted the testimony of Dr. Naftulin from a second deposition.[8] At the second deposition, Dr. Naftulin testified that he performed a second IME of Claimant on May 16, 2017. Based upon that examination and his review of Claimant's medical records, Dr. Naftulin opined that Claimant was fully recovered from the low back strain resulting from the November 4, 2014 incident as of May 16, 2017, and did not require further treatment. (Sept. 7, 2017 Dep. Tr. at 12, 14; FOF ¶ 11(b).) This is based upon Dr. Naftulin's conclusion that there is no anatomical explanation for Claimant's continued complaints of symptoms relating to the November 4, 2014 injury. (Sept. 7, 2017 Dep. Tr. at 24-26; FOF ¶ 11(c).) When asked whether Claimant could return to work in the same capacity as before the injury at issue,

---

[8] Dr. Naftulin's testimony from the second deposition can be found on pages 267a-318a of the reproduced record and is summarized in finding of fact 11.

8

Dr. Naftulin testified that Claimant "could return to his pre-injury level of activity, including work without restriction." (Sept. 7, 2017 Dep. Tr. at 15.) When asked by Claimant's counsel whether "there [was] any significant change in [Claimant's] condition" between his first and second IME, Dr. Naftulin responded that "[t]he records suggest no significant change, chronic ongoing pain complaints, although [Claimant's] clinical evaluation or physical examination was somewhat different between the two." (*Id.* at 50.)

In opposition to the Second Termination Petition, Claimant submitted the testimony of Dr. Shah from a second deposition.[9] At the second deposition, Dr. Shah testified that he examined Claimant for a third time on December 5, 2017, and based upon his examination, his diagnosis remained that Claimant suffers from an "aggravation injury to the lower back, thoracic herniations as well as posttraumatic spasm and mechanical back pain." (Dec. 11, 2017 Dep. Tr. at 11; FOF ¶ 9(a).) As he did in his first deposition, Dr. Shah opined that Claimant was not capable of returning to work in his previous capacity as an MRI technician and could work a modified position on a part-time basis. (Dec. 11, 2017 Dep. Tr. at 12-13; FOF ¶ 9(c).)

### D. WCJ's Decisions

The WCJ issued two identical Decisions on July 2, 2018, and July 6, 2018, under two different dispute numbers,[10] in which the WCJ adjudicated the various petitions. The WCJ found Dr. Naftulin, Claimant, and Dr. Shah each to be credible

---

[9] Dr. Shah's testimony from the second deposition can be found on pages 338a-94a of the reproduced record and is summarized in finding of fact 9.

[10] The First Termination Petition and the Review Petition were filed under one dispute number while the remaining petitions in this case were filed under a different dispute number.

in part. The WCJ found Dr. Naftulin's testimony not credible with respect to his testimony that "Claimant was completely recovered as of . . . March 2, 2015." (FOF ¶ 13.) Instead, the WCJ found Claimant and Dr. Shah credible to the extent they testified that Claimant was not completely recovered as of March 2, 2015. (*Id.* ¶ 14.) The WCJ based this finding largely on "the relative recentness of the injury" to March 2, 2015. (*Id.*) However, the WCJ found Dr. Naftulin credible in all other respects, including that Claimant's continued medical issues after May 16, 2017, were a result of his preexisting condition and **not** the November 4, 2014 injury. As such, the WCJ accepted Dr. Naftulin's opinion that Claimant had recovered from the November 4, 2014, injury, which was limited to the low back strain and did not aggravate his preexisting conditions, as of May 16, 2017. The WCJ reasoned that the results of objective diagnostic tests, as set forth in Claimant's medical records, supported Dr. Naftulin's opinion that Claimant's continued symptoms were a result of Claimant's long-standing preexisting conditions. (*Id.* ¶ 13.) The WCJ also accepted Dr. Naftulin's opinion that "Claimant was capable of performing the work that was available to him for eight hours per day." (*Id.* ¶ 15.) The WCJ did not credit Claimant and Dr. Shah to the extent they testified that "Claimant continued to suffer from the work injury as of May 16, 2017[,]" or that he could not work more than four hours per day in light of Dr. Naftulin's credible testimony. (*Id.* ¶ 14.) Based on these findings, the WCJ denied Employer's First Termination Petition and Claimant's Review Petition, but granted Employer's Second Termination Petition and Suspension Petition.

10

E.  Board's Opinion

Claimant appealed the WCJ's Decision to the Board.  Relevant to this appeal, Claimant argued that the WCJ erred in granting the Second Termination Petition because Employer did not demonstrate a change in Claimant's physical condition as required by *Lewis*.  Claimant also asserted that the Second Termination Petition was barred by res judicata pursuant to *Bechtel Power Corporation v. Workmen's Compensation Appeal Board (Miller)*, 452 A.2d 286 (Pa. Cmwlth. 1982).[11]  Additionally, Claimant argued that the WCJ erred in denying the Review Petition.  Specifically, Claimant argued that the WCJ erred by not adequately explaining why he did not credit Dr. Shah's testimony that Claimant suffered injuries beyond the low back strain described in the NCP.

The Board affirmed.  In concluding that *Lewis* was inapplicable, the Board reasoned that since the First and Second Termination Petitions were adjudicated in the same July 2, 2018 and July 6, 2018 Decisions, there was no prior decision; thus, *Lewis's* requirement that an employer establish a change in physical condition in any **subsequent** termination petitions was not triggered.  (Board's Opinion at 6.)  Similarly, with respect to res judicata, the Board determined that since a decision was not issued on the First Termination Petition prior to the July 2, 2018 and July 6, 2018 Decisions granting the Second Termination Petition, "res judicata is not applicable."  (*Id.* at 7.)  The Board also determined that the rule set forth in *Bechtel* did not apply in this case because Employer was not disputing the

_____

[11] In *Bechtel*, this Court held that an employer that has filed an appeal of a WCJ's decision granting WC benefits may not file a termination petition until a decision on the appeal of the WCJ's decision granting benefits is issued.  452 A.2d at 287-88.  We reasoned that to allow an employer to file a termination petition while an appeal of a WCJ's decision granting WC benefits was pending would allow the employer to both attack a finding of disability while at the same time argue the disability ceased.  *Id.*

11

initial disability claim or making inconsistent arguments.  (*Id.* at 7-8.)  As to the WCJ's decision not to credit Dr. Shah's testimony, the Board concluded that the WCJ was entitled to credit "in whole or in part a medical expert as he deems fit, so long as the WCJ provides objective reasons for his credibility determinations." (*Id.* at 8.)  Citing the fact that the WCJ "explained that Dr. Naftulin's testimony that Claimant's work injury was limited to a lumbar strain/sprain was more credible than Dr. Shah's opinion that Claimant had sustained aggravations to his preexisting [] conditions," the Board determined the WCJ provided an adequate objective reason for his credibility determination because Dr. Naftulin's testimony was supported by Claimant's medical records.  (*Id.* at 9.)

Claimant then filed the instant Petitions For Review.[12]

## II.    Discussion

In his brief, Claimant argues that he was wrongfully forced to contest the Second Termination Petition during the pendency of the First Termination Petition and Review Petition because a decision on those petitions languished after the retirement of WCJ Doneker.[13]  Claimant submits that "it was impossible for [him]

---

[12] "Our scope of review of the Board's decision[s] is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated."  *Virgo v. Workers' Comp. Appeal Bd. (Cnty. of Leigh-Cedarbrook)*, 890 A.2d 13, 17 n.8 (Pa. Cmwlth. 2005).

[13] Employer argues that Claimant has not preserved any issues for our review. Claimant's Petitions for Review filed with this Court list the following two issues for our review: (1) whether "[t]he [WCJ's] decision to allow the re-litigation of a [S]econd Termination Petition before issuing a decision on the [F]irst Termination Petition and Review Petition was wrong as a matter of law because it forced the parties to re-litigate the same issues" and (2) whether "[t]he [WCJ's] decision to deny the Review Petition was wrong as a matter of law because it was not supported by any of the medical evidence of record."  (Claimant's Petitions for Review at 5-6.) In his brief to this Court, Claimant presents a single issue for review:  whether "the [Board] erred **(Footnote continued on next page…)**

12

**(continued…)**

as a matter of law when it failed to apply *Lewis* and reverse the WCJ's Decision[s]." (Claimant's Brief at 12.) Employer contends that Claimant has waived review of the two issues presented in his Petitions for Review by failing to develop those issues in his brief. Additionally, Employer contends Claimant has waived review of the single issue raised in his brief for failing to include that issue in his Petitions for Review.

A petition for review filed in our appellate jurisdiction is to include, among other things, "a general statement of the objections to the order or other determination." Pennsylvania Rule of Appellate Procedure 1513(d)(5), Pa.R.A.P. 1513(d)(5). However, under this Rule, "the omission of an issue from the statement shall **not** be the basis for a finding of waiver if the court is able to address the issue based on the certified record." *Id.* (emphasis added). In addition, "[n]o question will be considered unless it is stated in the statement of questions involved" section of a party's brief "or is fairly suggested thereby." Pennsylvania Rule of Appellate Procedure 2116(a), Pa.R.A.P. 2116(a). Further, an appellate brief is to "be divided into as many parts as there are questions to be argued." Pennsylvania Rule of Appellate Procedure 2119(a), Pa.R.A.P. 2119(a). Thus, an issue raised in a petition for review, but not addressed either in the statement of questions involved or argument section of the petitioner's brief, is waived. *Muretic v. Workers' Comp. Appeal Bd. (Dep't of Labor & Indus.)*, 934 A.2d 752, 758 (Pa. Cmwlth. 2007).

Claimant raised two issues in his Petitions for Review, and while the issue raised in his brief is not phrased exactly as either of these issues, the first issue raised in Claimant's Petitions for Review and the issue in his brief can both be broadly understood as challenging Employer's litigation of a Second Termination Petition before a determination on the First Termination Petition has been issued. This issue was addressed by the Board in its Opinion and we find it is properly before us.

While Claimant's Petitions for Review also questioned whether the WCJ's decision to deny the Review Petition was supported by substantial evidence, Claimant did not develop that argument in his brief and so it is waived. *Id.* at 758. Had it not been waived, we would have concluded that the WCJ's Decisions were supported by substantial evidence. "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *Wawa v. Workers' Comp. Appeal Bd. (Selter)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008). Claimant's Review Petition alleged that the description of his injury in the NCP was incorrect as it failed to include the aggravation of his preexisting conditions. Dr. Naftulin, Employer's expert, testified that the November 4, 2014 injury was limited to low back sprain/strain and that this injury did not aggravate Claimant's preexisting conditions. (Nov. 2, 2015 Dep. Tr. at 31-32.) Dr. Shah, Claimant's expert, testified that the November 4, 2014 injury did aggravate Claimant's preexisting conditions. (Feb. 10, 2016 Dep. Tr. at 14.). The WCJ credited Dr. Naftulin's testimony that the November 4, 2014 injury did not aggravate Claimant's preexisting conditions, explaining that Dr. Naftulin's testimony was supported by diagnostic tests performed before the November 4, 2014 injury. (FOF ¶ 13.) In WC cases, WCJs are free to credit or reject, in whole or in part, expert testimony. *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry)*, 938 A.2d 1150, 1157 (Pa. Cmwlth. 2007). "If the WCJ did not

**(Footnote continued on next page…)**

to know which evidentiary burden would apply to the Employer's [S]econd Termination Petition because [the] WCJ [] did not circulate a decision" on the First Termination Petition or Review Petition "despite the record closing in January 2017" and that "[t]his uncertainty prevented [] Claimant from adequately raising a legal defense." (Claimant's Brief (Br.) at 13.) Because a decision was not issued on the First Termination Petition and Review Petition before the filing and litigation of the Second Termination Petition, Claimant contends he did not know if the additional evidentiary burden required by *Lewis* would apply or what the description of the injury would be. Claimant asserts that "[p]arties cannot be left to guess what their evidentiary burden requires them to prove" and that "[t]his case demonstrates the ill effects that can arise from a [WCJ]'s failure to issue a timely decision." (*Id.* at 14.)

Employer responds that, unlike the employer in *Lewis*, it was not engaged in the serial prosecution of termination petitions, but "[r]ather, [it] prosecuted two Termination Petitions – alleging two dates of full recovery – simultaneously during the course of a single proceeding before the WCJ." (Employer's Br. at 47 (emphasis omitted).) Therefore, because there was no adjudication of any termination petition before the July 2, 2018 and July 6, 2018 Decisions adjudicating both the First and Second Termination Petitions were issued, the change in circumstances requirement set forth in *Lewis* is not applicable in the present matter. Additionally, Employer argues that even if *Lewis* is applicable,

---

(continued…)

actually observe the witnesses' demeanor, the WCJ must provide some articulation of the objective basis for [the WCJ's] credibility determinations." *Id.* Here, the WCJ credited Dr. Naftulin's deposition testimony that the November 4, 2014 injury did not aggravate Claimant's preexisting conditions and provided an objective basis for doing so. This constitutes substantial evidence.

Employer established through Dr. Naftulin's second deposition testimony the requisite change in Claimant's condition between March 2, 2015, the first alleged date of recovery, and May 16, 2017, the date on which the WCJ found Claimant to have recovered. Employer asserts that "[a] comparison of Dr. Naftulin's March 2, 2015 and May 16, 2017 examinations, confirms [C]laimant's two very different physical presentations." (*Id.* at 49.) In its brief, Employer sets forth a "Table of Comparison," which highlights changes in Claimant's physical condition between the two IMEs. (*Id*. at 49-52.) Employer contends that Claimant's "counsel attempted to establish that there was no difference in [C]laimant's physical presentation from March 2, 2015[,] to May 16, 2017[,]" during Dr. Naftulin's second deposition in order to thwart the Second Termination Petition through an application of *Lewis.* (*Id*. at 48.)

Upon review, we conclude the Board did not err in determining that *Lewis* is inapplicable to the present matter. Section 413 of the WC Act provides: "A [WCJ] . . . may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable . . . upon petition filed by either party . . . , [and] upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed." 77 P.S. § 772. To prevail

> [o]n a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability ceased, or any remaining conditions are unrelated to the work injury. An employer may satisfy this burden by presenting unequivocal and competent medical evidence of claimant's full recovery from [his] work-related injuries.

*Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008) (citations omitted). In *Lewis*, our Supreme Court examined an

15

employer's burden of proof when litigating a termination petition subsequent to the denial of a prior termination petition.

At issue in *Lewis* was "whether an employer must demonstrate a change in a claimant's physical condition since the preceding disability adjudication in order to bring a petition to terminate or modify benefits due to a decrease in physical disability." 919 A.2d at 925. The Court determined that "where there have been prior petitions to modify or terminate benefits, the employer[,]" in a second or subsequent petition to terminate benefits, "must demonstrate a change in physical condition **since the last disability determination**." *Id.* at 926 (emphasis added). The Court reasoned that "[a]bsent this requirement[,] 'a disgruntled employer (or claimant) could repeatedly attack what he considers an erroneous decision of a [WCJ] by filing petitions based on the same evidence ad infinitum, in the hope that one [WCJ] would finally decide in [the employer's] favor.'" *Id*. (quoting *Dillon v. Workmen's Comp. Appeal Bd. (Greenwich Collieries)*, 640 A.2d 386, 389 (Pa. 1994)).

Here, there was an unusual procedural progression in the litigation. Employer filed its First Termination Petition on June 12, 2015, and Claimant filed a Review Petition. After the record was closed, the parties reached a tentative settlement agreement and then the WCJ retired. Thereafter, a Petition for Approval of a Compromise and Release Agreement was listed before the new WCJ. At the hearing, the parties informed the WCJ that settlement was no longer an option and that they would proceed to a decision. Before a decision on the First Termination Petition was issued, Employer filed a Second Termination Petition on May 23, 2017, and then filed a Suspension Petition seeking suspension of Claimant's benefits as of January 18, 2017. This resulted in the parties litigating

16

the Second Termination Petition during the pendency of the First Termination Petition and Review Petition. Also during this time, Employer allegedly filed seven Notification of Suspension/Modification Petitions, to which Claimant responded by filing Challenge Petitions. The WCJ ultimately issued an interlocutory order on September 25, 2017, confirming Employer's obligation to pay partial disability benefits. (Sept. 25, 2017 Order.) The WCJ simultaneously adjudicated the First and Second Termination Petitions, the Review Petition, and the Suspension Petition in the identical Decisions issued on July 2, 2018, and July 6, 2018. Therein, the WCJ rejected Dr. Naftulin's testimony that Claimant had recovered from the November 4, 2014 injury by March 2, 2015, while accepting Dr. Naftulin's opinion that Claimant had recovered from the November 4, 2014 injury as of May 16, 2017. Accordingly, the WCJ denied the First Termination Petition and granted the Second Termination Petition. As there had not been a determination of the termination or modification petitions prior to the WCJ's July 2, 2018 and July 6, 2018 Decisions, technically the requirement set forth in *Lewis* that an employer "must demonstrate a change in physical condition since the **last disability determination**" is not applicable in this case. 919 A.2d at 926 (emphasis added).

Further, this case does not illustrate the concern raised by the Supreme Court in *Lewis*, that employers may continuously file termination petitions based on the same evidence "in the hope that one [WCJ] would finally decide in the [employer's] favor." *Id.* Since there was no determination on the First Termination Petition, or any other termination or modification petition, before the filing of the Second Termination Petition, Employer could not have been seeking a different result. We also note that Employer's First and Second Termination

17

Petitions were not identical. The first alleged a recovery date of March 2, 2015, and presented Dr. Naftulin's first IME and his first deposition testimony as support. Employer's Second Termination Petition alleged a recovery date of May 16, 2017, and presented Dr. Naftulin's **second** IME and his **second** deposition testimony as support. Thus, the Second Termination Petition not only alleged a different recovery date, which was nearly two years later than the date of recovery alleged in the First Termination Petition, but was also supported by **new evidence**. Therefore, this matter does not present the situation where an employer is attempting to continually file termination "petitions based upon the same evidence ad infinitum" in order to harass the claimant or obtain a more favorable result.[14] *Id.*

We recognize that because of numerous factors, a decision was not issued regarding the First Termination Petition and the Review Petition before Claimant was required to litigate the Second Termination Petition, and that this was challenging. However, we are not persuaded by Claimant's argument that he was prejudiced by not knowing which evidentiary burden would apply to the Second

---

[14] Even if *Lewis* does apply and Employer was required to demonstrate a change in Claimant's physical condition between the First and Second Termination Petitions, implicit in the WCJ's Decisions is that Employer demonstrated such a change. The WCJ credited the testimony of Dr. Shah that Claimant was not recovered from the injury by March 2, 2015, and credited the testimony of Dr. Naftulin that any remaining disability of Claimant, after May 16, 2017, was related to Claimant's significant and long-standing preexisting conditions. Dr. Naftulin testified that Claimant's "physical examination was somewhat different between the two" IMEs. (Sept. 7, 2017 Dep. Tr. at 50.) The WCJ's Decisions, based on the testimony he found credible, found a change in Claimant's physical condition between the dates asserted in the First and Second Termination Petitions and that Claimant recovered by May 16, 2017. We are bound by the credibility determinations of the WCJ. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006). Additionally, in light of the fact that Claimant does not challenge in his brief the WCJ's findings of fact surrounding his recovery from the November 4, 2014 injury, those findings are conclusive on appeal. *GNB, Inc. v. Workers' Comp. Appeal Bd. (Korman)*, 810 A.2d 732, 735 (Pa. Cmwlth. 2002).

18

Termination Petition and, therefore, he could not raise an adequate defense. Regardless of whether Employer would have to demonstrate a change in Claimant's physical condition, as set forth in *Lewis*, Employer, for both the First and Second Termination Petitions, had the "burden of proving by substantial evidence that a claimant's disability ceased, or any remaining conditions are unrelated to the work injury." *Westmoreland Cnty.*, 942 A.2d at 217. Claimant had an adequate opportunity to defend against the First and Second Termination Petitions because Claimant was afforded the opportunity to submit evidence in opposition to those petitions both through his own testimony and the two depositions of Dr. Shah. Moreover, Claimant's counsel asked Dr. Naftulin during his second deposition whether there had been "any significant change in [Claimant']s condition between" his first and second IME, (Sept. 7, 2017 Dep. Tr. at 50), which appears designed to elicit facts related to the *Lewis* requirement.

## III. Conclusion

Based upon the foregoing reasons, the Board did not err in determining that *Lewis* is inapplicable to this matter, and Claimant was not prejudiced by having to defend against the Second Termination Petition before a decision on the First Termination Petition and Review Petition was issued. Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Roy Carlson,     :
            Petitioner     :
            :
         v.          :    No. 1198 C.D. 2019
            :
St. Luke's Quakertown Hospital     :
(Workers' Compensation Appeal     :
Board),     :
            Respondent     :

Matthew Roy Carlson,     :
            Petitioner     :
            :
         v.          :    No. 962 C.D. 2020
            :
St. Luke's Quakertown Hospital     :
(Workers' Compensation Appeal     :
Board),     :
            Respondent     :

# O R D E R

**NOW**, December 22, 2020, the August 7, 2019 Orders of the Workers' Compensation Appeal Board in the above-captioned matters are hereby **AFFIRMED**.

 

_____
**RENÉE COHN JUBELIER,** Judge